Kristen C. Rodriguez (Admitted Pro Hac Vice)
Rebecca Hughes Parker (Admitted Pro Hac Vice)
**Dentons US LLP**
1221 Avenue of the Americas
New York, NY 10020
Tel.: (212) 768-6700
Fax: (212) 768-6800
kristen.rodriguez@dentons.com
rebeccahughes.parker@dentons.com

J. Mark Gibb (5702)
**Dentons Durham Jones Pinegar, PC**
111 South Main Street, Suite 2400
Salt Lake City, Utah 84111
Tel.: (801) 415-3000
Fax: (801) 415-3500
mark.gibb@dentons.com

*Attorneys for Dotdash Media, Inc. d/b/a Dotdash Meredith*

<table>
<tr><td colspan="2" align="center"><strong>IN THE UNITED STATES DISTRICT COURT<br>FOR THE DISTRICT OF UTAH</strong></td></tr>
<tr><td>TERESSA LANGSTON, individually and on behalf of all others similarly situated,<br><br> Plaintiff, <br><br>vs.<br><br>DOTDASH MEDIA, INC. D/B/A DOTDASH MEREDITH,<br><br> Defendant. </td><td><strong>DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT</strong><br><br>Case No. 1:24-cv-00046-DAO<br><br>Judge Tena Campbell</td></tr>
</table>

# TABLE OF CONTENTS

**Page(s)**

RELIEF SOUGHT ................................................................................................... 1

BRIEF STATEMENT OF GROUNDS FOR MOTION .......................................... 1

INTRODUCTION ................................................................................................... 2

FACTUAL BACKGROUND .................................................................................. 3

I.    NISNPIA's Consumer Remedy Is Limited To Companies In Utah. ..................... 3

II.   The Complaint Contains Only Conclusory Allegations Of NISNPIA
      Violations. ..................................................................................................... 4

LEGAL STANDARD .............................................................................................. 5

ARGUMENT ........................................................................................................... 6

I.    The Complaint Must Be Dismissed For Lack Of Subject Matter
      Jurisdiction. ................................................................................................. 6

      A.    Plaintiff Lacks Article III Standing ........................................................ 6

            i.    *Receipt Of Junk Mail Is Not A Cognizable Injury Nor
                  Traceable To DDM* ...................................................................... 7

            ii.   *A Bare Statutory Violation Is Insufficient To Confer
                  Standing* ...................................................................................... 8

      B.    Because NISNPIA Prohibits Class Actions, There Is No CAFA
            Jurisdiction. ........................................................................................ 12

      C.    As A Prudential Matter Of Comity And Federalism, The Court
            Should Decline Jurisdiction. ................................................................ 15

II.   The Complaint Fails To State A Claim Under NISNPIA. ................................... 17

      A.    Plaintiff Has Not Adequately Alleged That DDM Is Subject To
            NISNPIA. ............................................................................................ 17

      B.    Plaintiff Does Not Plausibly Allege That DDM Disclosed Her
            Information. ......................................................................................... 21

III.    Plaintiff's Claim Is Barred By The Applicable Statute Of Limitations................ 24

CONCLUSION.............................................................................................................. 25

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Alvarado v. KOB-TV, L.L.C.*,
  493 F.3d 1210 (10th Cir. 2007) .............................................................11

*Aparicio v. Wells Fargo Bank, N.A.*,
  2011 WL 5325578 (D. Utah Oct. 17, 2011) ...........................................25

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009).......................................................................6, 20, 21

*Auto-Owners Ins. Co. v. Paskco Constr., Inc.*,
  2024 WL 291130 (D. Utah Jan. 25, 2024)..............................................19

*Baker v. USD 229 Blue Valley*,
  979 F.3d 866 (10th Cir. 2020) .................................................................5

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544, 570 (2007)........................................................................24

*Blood v. Labette Cnty. Med. Ctr.*,
  2022 WL 11745549 (D. Kan. Oct. 20, 2022) ...........................................7

*Burford v. Sun Oil Co.*,
  319 U.S. 315 (1943).................................................................................16

*Callahan v. Ancestry.com Inc.*,
  2021 WL 2433893 (N.D. Cal. June 15, 2021) ........................................10

*Camoras v. Publishers Clearing House, LLC*,
  2024 WL 2262786 (D. Utah May 17, 2024)............................................18

*Camreta v. Greene*,
  563 U.S. 692 (2011).................................................................................14

*In re Castletons, Inc.*,
  990 F.2d 551 (10th Cir. 1993) .................................................................24

*Cherny v. Emigrant Bank*,
  604 F. Supp. 2d 605 (S.D.N.Y. 2009).......................................................7

iv

*Collins v. Oilsands Quest Inc.*,
    484 B.R. 593 (S.D.N.Y. 2012) ............................................................................... 19

*Cook v. GameStop, Inc.*,
    689 F. Supp. 3d 58 (W.D. Pa. 2023) ..................................................................... 11

*Curry v. Mrs. Fields Gifts, Inc.*,
    2023 WL 6318108 (D. Utah Sept. 28, 2023) ........................................................ 14

*Full Life Hospice, LLC v. Sebelius*,
    709 F.3d 1012 (10th Cir. 2013) ............................................................................... 5

*Fullmer v. A-1 Collection Agency, LLC*
    2022 WL 1538675 (D. Utah May 16, 2022) ......................................................... 14

*GFF Corp. v. Associated Wholesale Grocers, Inc.*,
    130 F.3d 1381 (10th Cir. 1997) ............................................................................. 18

*Gordon v. Crouchley*,
    554 F. Supp. 796 (D.R.I. 1982) ............................................................................. 16

*Hess v. Port Authority Trans-Hudson Corp.*,
    513 U.S. 30 (1994) ................................................................................................. 15

*Holmes v. Countrywide Fin. Corp.*,
    2012 WL 2873892 (W.D. Ky. July 12, 2012) ......................................................... 7

*Johnson v. General Dynamics Info. Tech., Inc.*,
    675 F. Supp. 2d 236 (D.N.H. 2009) ...................................................................... 19

*Jones v. Heaton*,
    775 F. App'x 966 (10th Cir. 2019) .......................................................................... 6

*Khalik v. United Air Lines*,
    671 F.3d 1188 (10th Cir. 2012) ......................................................................... 6, 22

*Laufer v. Looper*,
    22 F.4th 871 (10th Cir. 2022) ..................................................................... 6, 7, 10

*League of United Latin Am. Citizens v. Bredesen*,
    500 F.3d 523 (6th Cir. 2007) .................................................................................. 6

*Levin v. Commerce Energy, Inc.*,
    560 U.S. 413 (2010) ............................................................................................... 15

v

*Los Lobos Renewable Power, LLC v. Americulture, Inc.*,
    885 F.3d 659 (10th Cir. 2018) ...................................................................12

*Lujan v. Defs. of Wildlife*,
    504 U.S. 555 (1992) ..................................................................................7

*McCombs v. Delta Grp. Elecs., Inc.*,
    676 F. Supp. 3d 1064 (D.N.M. 2023) ...................................................7, 8

*McLin v. Twenty-First Jud. Dist.*,
    614 F. Supp. 3d 278 (M.D. La. 2022) ....................................................19

*Nashel v. New York Times*,
    2022 WL 6775657 (E.D. Mich. Oct. 11, 2022) ................................22, 23

*Pueblo of Jemez v. United States*,
    790 F.3d 1143 (10th Cir. 2015) ...............................................................5

*Racher v. Westlake Nursing Home Ltd. P'ship*,
    871 F.3d 1152 (10th Cir. 2017) .............................................................13

*Ridge at Red Hawk, L.L.C. v. Schneider*,
    493 F.3d 1174 (10th Cir. 2007) .............................................................21

*Roberts v. C.R. England*, *Inc.*,
    318 F.R.D. 457 (D. Utah 2017) .............................................................24

*Robinson v. Morgan Stanley*,
    2008 WL 4874459 (N.D. Ill. June 18, 2008) ........................................25

*Salcedo v. Hanna*,
    936 F.3d 1162 (11th Cir. 2019) ...............................................................7

*Santa Fe All. for Pub. Health & Safety v. City of Santa Fe*,
    993 F.3d 802 (10th Cir. 2021) .................................................................7

*Schutza v. Cuddeback*,
    262 F. Supp. 3d 1025 (S.D. Cal. 2017)..................................................16

*In re Sci. Applications Int'l Corp. (SAIC) Backup Tape Data Theft Litig.*,
    45 F. Supp. 3d 14 (D.D.C. 2014) ............................................................8

*Shady Grove Orthopedic Associates, P.A. v. Allstate Ins. Co.*,
    559 U.S. 393 (2010)....................................................................12, 13, 14

*Shields v. Prof'l Bureau of Collections of Md., Inc.*,
  55 F.4th 823 (10th Cir. 2022) ..........................................................................7, 9, 11

*Silver v. Stripe Inc.*,
  2021 WL 3191752 (N.D. Cal. July 28, 2021)..........................................................12

*Sims v. Opportunity Fin.*,
  2021 WL 1391565 (N.D. Cal. Apr. 13, 2021) ........................................................20

*Spokeo, Inc. v. Robins*,
  578 U.S. 330 (2016)...................................................................................................9

*State v. Jordan*,
  2021 UT 37, 493 P.3d 683 .......................................................................................19

*Symbology Innovations, LLC v. Lego Sys.*,
  282 F. Supp. 3d 916 (E.D. Va. 2017) ......................................................................19

*In re Target Corp. Data Sec. Breach Litig.*,
  66 F. Supp. 3d 1154 (D. Minn. 2014).................................................................13, 14

*TransUnion LLC v. Ramirez*,
  594 U.S. 413 (2021)...................................................................................................9

*Warnick v. Cooley*,
  895 F.3d 746 (10th Cir. 2018) .................................................................................22

*Warth v. Seldin*,
  422 U.S. 490 (1975).................................................................................................15

*Wheaton v. Apple Inc.*,
  2019 WL 5536214 (N.D. Cal. Oct. 25, 2019)....................................................22, 23

**Statutes**

28 United States Code
  § 1332...........................................................................................................................1
  § 1332(a) ...................................................................................................................15
  §1332(d) ....................................................................................................................12

Utah Code Annotated

    § 13-37-102(2) ...................................................................................................1, 4, 17

    § 13-37-201 ...........................................................................................................4, 8

    § 13-37-202 ...............................................................................................................4

    § 13-37-203 ...............................................................................................................4

    § 13-37-203(1) ........................................................................................................17

    § 13-37-203(2)(a) ...................................................................................................24

    § 13-37-203(3) ....................................................................................................1, 12

    § 16-10a-1503(1)(e) ...............................................................................................18

    § 16-17-203(1) ........................................................................................................18

    § 78B-2-302(2) .......................................................................................................24

**Other Authorities**

Federal Rules of Civil Procedure

    8.............................................................................................................................22

    12(b)(1) .........................................................................................................1, 3, 5

    12(b)(6) ..................................................................................................1, 3, 5, 24

    23................................................................................................12, 13, 14, 15

Utah State House of Rep. 2003 Gen. Session, Day 12, H.B. 0040S01 (Jan. 29,
    2003) ..................................................................................................................9, 21

**RELIEF SOUGHT**

Defendant Dotdash Media, Inc. d/b/a Dotdash Meredith ("DDM") seeks dismissal of Plaintiff Teressa Langston's Complaint with prejudice under Fed. R. Civ. P. 12(b)(1) and 12(b)(6).

**BRIEF STATEMENT OF GROUNDS FOR MOTION**

Plaintiff has sued on behalf of herself and a putative class under Utah's Notice of Intent to Sell Nonpublic Personal Information Act, Utah Code Ann. § 13-37-101, *et seq.* ("NISNPIA" or the "Act"). Plaintiff's Complaint is subject to dismissal on several grounds:

The Court does not have subject matter jurisdiction because Plaintiff lacks Article III standing. The only harm Plaintiff alleges is the receipt of unwanted junk mail and the mere asserted violation of the Act, neither of which is sufficient to establish injury-in-fact. *See* Argument, Section I.A.

NISNPIA expressly prohibits class actions, thus Plaintiff cannot bring her claim on behalf of a putative class. Utah Code Ann. § 13-307-203(3). Plaintiff therefore cannot satisfy the amount-in-controversy requirement of 28 U.S.C. § 1332 because the only remedy under NISNPIA is a $500 statutory penalty. *See* Argument, Section I.B. Because NISNPIA prohibits class actions, the Court should decline to exercise jurisdiction for prudential reasons. *See* Argument, Section I.C.

Plaintiff fails to state a claim against DDM because she fails to allege that DDM has "an office or other place of business" in Utah, which is a necessary element of a NISNPIA claim. Utah Code § 13-307-102(2); *see* Argument, Section II.A. Nor does the Complaint plausibly allege that DDM disclosed Plaintiff's information to third parties, as is also required. Plaintiff's mere reliance on legal conclusions is insufficient. *See* Argument, Section II.B.

Finally, because Plaintiff fails to plead sufficiently that DDM disclosed her information, let alone failed to provide her with statutory notice, within one year before bringing her lawsuit, her claim is barred by the statute of limitations. *See* Argument, Section III.

## INTRODUCTION

This Complaint is an attempted end-run around Article III, the applicable pleading standards, and the very statute it seeks to enforce. Plaintiff brings a putative class action on the allegation that DDM, a New York-based media company, disclosed her "Private Purchase Information" without the notice required by a Utah statute, NISNPIA. But that statute expressly applies only to companies with "an office or other place of business" in Utah (which DDM does not have) and prohibits class actions, and Plaintiff does not (and cannot) plausibly plead that she has suffered ***any*** harm from the alleged disclosure—or even that her information was actually disclosed. This case should be dismissed on multiple grounds.

As a threshold, and facially dispositive, matter, DDM is not subject to NISNPIA. Because DDM has no "office or other place of business" in Utah, Plaintiff is reduced to alleging that the Utah office of DDM's registered agent is somehow an adequate substitute. Under this logic, every out-of-state corporation with a registered agent for service of process in Utah is subject to the Act. But the Utah office of a registered agent is insufficient to qualify a defendant as a "commercial entity" regulated by the NISNPIA, as Magistrate Judge Kohler recently held as a matter of law in a strikingly similar case brought by Plaintiff's same attorneys.

Beyond this fundamental deficiency, the allegations in the Complaint, made solely on "information and belief," fail to plead a violation of NISNPIA by DDM. The Complaint contains no allegations about the actual disclosure of ***any*** customer's (let alone Plaintiff's) information.

2

Plaintiff does not allege *whose* customer's information was supposedly disclosed, nor *to whom*, nor *when*. None of Plaintiff's allegations, standing alone or taken together, create a plausible inference that DDM disclosed anyone's information—much less Plaintiff's—within the applicable one-year statute of limitations. These pleading deficiencies warrant dismissal on their own.

But this Court need not even reach the merits of Plaintiff's claim because this case does not belong in federal court. Plaintiff lacks Article III standing because she fails to allege a concrete injury traceable to DDM's alleged disclosure of her information. The only "injuries" Plaintiff alleges are a bare statutory violation of NISNPIA and an increase in junk mail that Plaintiff implausibly alleges was caused by an unidentified disclosure by DDM. The alleged statutory violation alone is insufficient to confer Article III standing, and the increase in junk mail is a minor annoyance ubiquitous in modern life that cannot be traced to any particular source.

Moreover, the only claimed basis for federal jurisdiction over this case, which exclusively asserts a Utah state law claim on behalf of Utah residents, is the Class Action Fairness Act ("CAFA"). But NISNPIA, by its own terms, prohibits class actions, and without class allegations, this Court has no jurisdiction over this purely state law claim. Even if the Court were to conclude otherwise, this putative class action lawsuit, tactically filed in federal court, would blatantly subvert the judgment of the Utah Legislature in enacting NISNPIA. The Court should therefore decline to entertain this case as a prudential matter of comity and federalism.

Dismissal is in order under Rules 12(b)(1) and 12(b)(6).

## FACTUAL BACKGROUND

## I.    NISNPIA's Consumer Remedy Is Limited To Companies In Utah.

NISNPIA only applies to "commercial entities," defined as entities that have "an office or

other place of business located" in Utah *and* "in the ordinary course of business transact[] a consumer transaction" in Utah. Utah Code § 13-37-102(2).

If a covered commercial entity intends to disclose a consumer's nonpublic information to a third party for compensation, NISNPIA requires the company to provide notice of that intent and prohibits such disclosure without notice. *See* Utah Code §§ 13-37-201 to -202. The Act gives consumers a private right of action against a covered entity with an exclusive remedy of $500 statutory damages for failure to provide the required notice. *Id.* § 13-37-203. NISNPIA expressly prohibits class actions. *Id.*

## II.    The Complaint Contains Only Conclusory Allegations Of NISNPIA Violations.

Plaintiff, a Utah resident, filed this action on March 13, 2024, alleging a NISNPIA claim against DDM, a Delaware corporation with its headquarters and principal place of business in New York. Compl. ¶ 15. It publishes numerous magazines, books, and other publications about a wide array of topics. *Id.* ¶ 18. DDM has no corporate presence in Utah; it only has a registered agent as required by state law in order to transact business. *See id.* ¶ 16.

In her Complaint, Plaintiff, an alleged subscriber (at least at some time since January 1, 2004, the effective date of the Act) to various DDM publications, alleges "on information and belief" that DDM "rents, sells, exchanges, or otherwise discloses for compensation its customers' Private Purchase Information to third parties"—i.e., their names, home addresses, and the fact that they are subscribers of Defendant's publications—without the requisite notice under NISNPIA. *Id.* at Preamble, ¶ 11.  Plaintiff alleges that the records allegedly disclosed by DDM to third parties reveal Plaintiff's "purchasing patterns" and "personal preferences," thereby constituting "nonpublic personal information" within the meaning of NISNPIA. *Id.* ¶ 76.

Plaintiff does not identify any of the "third parties" to whom DDM allegedly disclosed purportedly nonpublic personal information. She does not specify the time frames during which she made her alleged purchases from DDM nor when the alleged unlawful disclosures were made. Nor does she provide any facts suggesting DDM actually disclosed her nonpublic information. And, although Plaintiff alleges she did not receive the required notice, she does not allege that she would have acted differently if she had received it.

Plaintiff seeks to represent a class of all persons in Utah who allegedly had their nonpublic information obtained by DDM since January 1, 2004 through a consumer transaction and who, during the applicable statutory period, had that information disclosed by DDM to a third party. *See id.* ¶ 58. Plaintiff seeks $500 in statutory damages and costs under NISNPIA. *Id.* ¶ 82.

## LEGAL STANDARD

Because federal courts are courts of limited jurisdiction, "[a] court lacking jurisdiction cannot render judgment but must dismiss the cause at any stage of the proceedings in which it becomes apparent that jurisdiction is lacking." *Pueblo of Jemez v. United States*, 790 F.3d 1143, 1151 (10th Cir. 2015) (citation and quotation marks omitted). "Under Federal Rule of Civil Procedure 12(b)(1), a party may move to dismiss a case for lack of subject-matter jurisdiction, mounting either a facial or factual attack." *Baker v. USD 229 Blue Valley*, 979 F.3d 866, 872 (10th Cir. 2020). A facial attack, as here, "assumes the allegations in the complaint are true and argues they fail to establish jurisdiction." *Id.* "[T]here is a presumption against [federal] jurisdiction," so Plaintiff bears the burden of establishing jurisdiction. *Full Life Hospice, LLC v. Sebelius*, 709 F.3d 1012, 1016 (10th Cir. 2013) (citation and quotation marks omitted).

To survive a motion to dismiss for failure to state a claim under Rule 12(b)(6), "a complaint

must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The court must "disregard conclusory statements and look only to whether the remaining, factual allegations plausibly suggest the defendant is liable." *Khalik v. United Air Lines*, 671 F.3d 1188 (10th Cir. 2012). A complaint must be dismissed if it "lacks facial plausibility that would create a reasonable inference that [the] defendant is liable for the misconduct alleged." *Jones v. Heaton*, 775 F. App'x 966, 966 (10th Cir. 2019). A plaintiff's "factual allegations, assumed to be true, must do more than create speculation or suspicion of a legally cognizable cause of action; they must show *entitlement* to relief." *League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007).

## ARGUMENT

### I.    The Complaint Must Be Dismissed For Lack Of Subject Matter Jurisdiction.

The Court lacks subject matter jurisdiction for multiple reasons. Plaintiff fails to allege a concrete injury-in-fact sufficient to establish Article III standing. Further, because NISNPIA expressly prohibits class actions, the Court lacks CAFA jurisdiction. And, based on prudential considerations, the Court should reject Plaintiff's effort to bring a class action barred by Utah law.

#### A.  Plaintiff Lacks Article III Standing.

Article III of the Constitution requires a plaintiff to have standing to sue. *See Laufer v. Looper*, 22 F.4th 871, 876 (10th Cir. 2022). To establish standing, "a plaintiff must have (1) 'suffered an injury in fact,' (2) that is 'fairly traceable to the challenged action of the defendant,' and (3) that is likely to be 'redressed by a favorable decision.'" *Id.* (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992)). For the first prong, to constitute an injury in fact, an injury

6

must be "(a) concrete and particularized and (b) actual or imminent." *Lujan*, 504 U.S. at 560. An injury is concrete if it is "'real' rather than 'abstract.'" *Laufer*, 22 F.4th at 876 (citation omitted). Under the second prong, "to show that an injury is 'fairly traceable' to the challenged conduct, a plaintiff must allege 'a substantial likelihood that the defendant's conduct caused plaintiff's injury in fact.'" *Santa Fe All. for Pub. Health & Safety v. City of Santa Fe*, 993 F.3d 802, 814 (10th Cir. 2021) (quoting *Nova Health Sys. v. Gandy*, 416 F.3d 1149, 1156 (10th Cir. 2005)).

Plaintiff cannot establish Article III standing because she has not suffered any actual, concrete injury, nor one that can be traced to DDM's alleged conduct. Her allegations of injury are insufficient as a matter of law: they are limited to the receipt of "a barrage of unwanted junk mail," no different than what the average person endures, and the bare assertion of a statutory violation.

### i.    Receipt Of Junk Mail Is Not A Cognizable Injury Nor Traceable To DDM

Courts have repeatedly "declined to confer standing when considering an increase in spam communications." *McCombs v. Delta Grp. Elecs., Inc.*, 676 F. Supp. 3d 1064, 1074 (D.N.M. 2023) (citing cases). The "inconvenient disruptions" caused by unwanted mail simply do not, as a matter of law, rise to the level of an actual injury. *Blood v. Labette Cnty. Med. Ctr.*, 2022 WL 11745549, at *6 (D. Kan. Oct. 20, 2022); *Shields v. Prof'l Bureau of Collections of Md., Inc.,* 55 F.4th 823, 826, 829–30 (10th Cir. 2022) (holding that unwanted, misleading collection letters did not constitute a cognizable injury).[1]

---

[1] *See also Salcedo v. Hanna,* 936 F.3d 1162, 1172 (11th Cir. 2019) ("brief, inconsequential annoyance[s]" from spam are "not a basis for invoking the jurisdiction of the federal courts"); *Holmes v. Countrywide Fin. Corp.*, 2012 WL 2873892, at *11 (W.D. Ky. July 12, 2012) ("the annoyance of unwanted [mail] cannot form the basis of an injury"); *Cherny v. Emigrant Bank*, 604 F. Supp. 2d 605, 609 (S.D.N.Y. 2009) ("The receipt of spam by itself . . . does not constitute a sufficient injury.").

Nor does Plaintiff plausibly plead that her increased receipt of junk mail is fairly traceable to DDM's alleged disclosure of her personal information. Plaintiff's conclusory allegation that an increased quantum of junk mail is "a result" of DDM's alleged disclosure of her personal information is insufficient. Compl. ¶ 1. Absent an allegation that links the junk mail to DDM's alleged unlawful disclosure—such as a non-conclusory allegation that demonstrates that the mail included personal information uniquely available to DDM, or showing that her information "would have been difficult for marketers to locate" without DDM's alleged disclosure—Plaintiff "seems to simply be one among the many of us who are interrupted in our daily lives" by junk mail. *In re Sci. Applications Int'l Corp. (SAIC) Backup Tape Data Theft Litig.*, 45 F. Supp. 3d 14, 33 (D.D.C. 2014); *see McCombs*, F. Supp. 3d at 1074 (finding that "no reasonable inference can be drawn to establish a nexus" between a data disclosure and increased spam communications where plaintiff did not allege "the content or frequency of the spam communications"). Plaintiff's alleged "injury" from junk mail is a ubiquitous experience of modern life, not a gateway to federal court, and her Complaint fails to trace any junk mail to the alleged exposure of her personal information by DDM.

### ii.    A Bare Statutory Violation Is Insufficient To Confer Standing

Plaintiff's only remaining allegations of injury amount to a bare statutory violation—the alleged failure to receive notice required by NISNPIA and the alleged subsequent disclosure of her nonpublic information[2]—which is insufficiently concrete to confer Article III standing. A

---

[2] *See, e.g.*, Compl. ¶ 1 ("By renting, selling, and/or otherwise disclosing for compensation Plaintiff's Private Purchase Information … without providing Plaintiff prior notice of these disclosures, [DDM] violated [NISNPIA]."); ¶ 78 ("[A]t no time before entering into consumer transactions with [DDM] or providing their Private Purchase Information to [DDM] did Plaintiff or any member of the Class receive the notice required by Utah Code Ann. § 13-37-201.").

legislature "may not simply enact an injury into existence, using its lawmaking power to transform something that is not remotely harmful into something that is." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 426 (2021) (citation and quotation marks omitted). Thus, a plaintiff cannot "allege a bare procedural violation, divorced from any concrete harm, and satisfy the injury-in-fact requirement of Article III." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 341 (2016).

Tangible harms like physical or monetary damage readily qualify as concrete injuries, but Plaintiff alleges at most intangible harms here, which are concrete enough for Article III purposes if "the alleged injury to the plaintiff has a 'close relationship' to a harm 'traditionally' recognized as providing a basis for a lawsuit in American courts." *TransUnion*, 594 U.S. at 424 (quoting *Spokeo*, 578 U.S. at 341). Plaintiff must identify a "close historical or common-law analogue for [her] asserted injury." *Id.*; *see also Shields*, 55 F.4th at 828–29 (plaintiff must "allege a similar harm" to a "common law cause of action").

Plaintiff cannot anchor the alleged lack of notice of disclosure of her nonpublic information (*see* Compl. ¶¶ 1, 78) to any "close historical or common-law analogue" that would establish concrete harm. *TransUnion*, 594 U.S. at 424. NISNPIA's chief concern is in providing notice to consumers about the potential disclosure of nonpublic personal information; it does not prohibit disclosure or sale of that information, so long as a company provides the requisite notice.[3] Plaintiff's allegation that she was injured by DDM's alleged failure to provide the required notice is, at most, an informational injury, which has no common law analogue, and therefore does not

---

[3] The sponsor of the legislation confirmed that it is "not prohibiting the business of selling information. It's strictly notice. If they want to sell it, they can sell it, that's fine." Utah State House of Rep. 2003 Gen. Session, Day 12, H.B. 0040S01 (Jan. 29, 2003) at 57:50, *available at* https://le.utah.gov/av/floorArchive.jsp?markerID=12385.

confer standing unless it causes adverse, legally cognizable effects. *See Laufer*, 22 F.4th at 880–81.

For example, in *Laufer v. Looper*, the plaintiff alleged that the defendant hotel's reservation system did not provide certain information required by the Americans with Disabilities Act. *Id.* at 874. The Tenth Circuit held that she lacked standing because she had "not alleged that she has any interest in using the information" that was missing. *Id.* at 881. The court recognized that "failure to provide [consumers] with required disclosures in a specified format" does not give rise to Article III standing unless the plaintiff identifies resulting downstream consequences. *Id.* at 880–81. Here, Plaintiff similarly alleges that DDM failed to provide the notice required by NISNPIA (Compl. ¶ 78), but she does not allege any adverse, legally cognizable consequences of not receiving that information, such as how she would have used the information. For example, she does not claim that she would not have purchased or renewed her subscriptions had she received the notice. Even if Plaintiff "had a regulatory right to the information" required to be provided by the statute, "she has not demonstrated that the defendants' [alleged] failure to provide that information caused her to suffer an injury in fact." *Laufer*, 22 F.4th at 881.

Moreover, even if NISNPIA prohibited disclosure more generally, Plaintiff cannot identify a common-law analogue to any harm arising from the alleged disclosure of records purportedly containing information about her "purchasing patterns" or "personal preferences." Compl. ¶ 76. NISNPIA is not a statute that protects against intrusion by the government such that it is closely analogous to the historical privacy rights protected by the Fourth Amendment. *See, e.g.*, *Callahan v. Ancestry.com Inc.*, 2021 WL 2433893, at *4 (N.D. Cal. June 15, 2021) (holding that statute regulating use of personal information did not confer standing absent additional injury).

10

Nor is NISNPIA analogous to traditional privacy torts, such as intrusion upon seclusion, false light, publication of private facts, or misappropriation, all of which require a degree of offensive conduct and/or publicity that is not required by the Act or pled in the Complaint. *See, e.g.*, *Alvarado v. KOB-TV, L.L.C.*, 493 F.3d 1210, 1217 (10th Cir. 2007) ("[T]he tort of intrusion becomes actionable only when it is deemed 'highly offensive to a reasonable person' . . . .) (quoting Restatement (Second) of Torts § 652B & cmts. b, d); *see also Shields*, 55 F.4th at 828 (publication of private facts "occurs when a tortfeasor gives 'publicity to a matter concerning the private life of another' . . . . "'Publicity' means the information is conveyed 'to the public at large, or to so many persons that the matter must be regarded as substantially certain to become one of public knowledge.'") (quoting Restatement (Second) of Torts) § 652D & cmt. a).

NISNPIA incorporates none of these core common-law elements of offensiveness or publicity. The disclosure of a purchase of a DDM publication, or any patterns or preferences suggested thereby, does not implicate a level of offensiveness. Disclosure of one's preferences or purchasing patterns on the basis of a magazine subscription reveals no more than what one's neighbor or mailperson might surmise from deliveries to one's doorstep. "Product preference information is not personal information" and it is "no different from what [a retailer's] employees would have been able to observe if [plaintiff] had gone into a brick-and-mortar store and began browsing the inventory." *Cook v. GameStop, Inc*., 689 F. Supp. 3d 58, 66 (W.D. Pa. 2023). And business-to-business disclosures from DDM to companies like "data aggregators, data appenders, [or] data cooperatives" (Compl. ¶¶ 70, 73, 75) lack the publicity element inherent in traditional privacy torts. In short, because Plaintiff has failed to plead any concrete injury beyond a mere

statutory violation, much less one that is traceable to DDM's alleged conduct, she lacks Article III standing and the Complaint must be dismissed.

### B.  Because NISNPIA Prohibits Class Actions, There Is No CAFA Jurisdiction.

NISNPIA expressly prohibits class actions: "A person may not bring a class action under this chapter." Utah Code § 13-37-203(3). Plaintiff's class allegations must therefore be dismissed, and thus federal jurisdiction is unavailable under CAFA, 28 U.S.C. § 1332(d). *See Silver v. Stripe Inc.*, 2021 WL 3191752, at *5 (N.D. Cal. July 28, 2021) (dismissing class allegations in a NISNPIA case because "class action relief is unavailable under the statute").

The question of whether NISNPIA's class-action prohibition prevails in federal court, notwithstanding Rule 23, is, as the Tenth Circuit has instructed, governed by Justice Stevens' concurrence in *Shady Grove Orthopedic Associates, P.A. v. Allstate Ins. Co.*, 559 U.S. 393 (2010).[4] There, Justice Stevens explained that the Rules Enabling Act, which authorizes the Federal Rules of Civil Procedure, provides that those rules "shall not abridge, enlarge or modify any substantive right." *Shady Grove*, 559 U.S. at 418 (Stevens, J., concurring). In other words, "federal rules cannot displace a State's definition of its own rights or remedies." *Id.* This inquiry turns not on the formal categorization of a legislative provision as "substantive" or "procedural," but rather "on whether the state law actually is part of a State's framework of substantive rights or remedies." *Id.* at 419. Even a "seemingly procedural rule[ ]" may be "so bound up with the state-created right or remedy that it defines the scope of that substantive right or remedy." *Id.* at 420.

---

[4]  *Los Lobos Renewable Power, LLC v. Americulture, Inc.*, 885 F.3d 659, 668 n.3 (10th Cir. 2018) ("Justice Stevens' concurrence in *Shady Grove* provides the controlling analysis in the Tenth Circuit").

In stark contrast to the generally applicable state rule limiting class actions at issue in *Shady Grove*, which did not pertain to any particular substantive law, NISNPIA's class action prohibition specifically limits the substantive right to sue for a violation of that statute and that statute alone. *See In re Target Corp. Data Sec. Breach Litig.*, 66 F. Supp. 3d 1154, 1165 (D. Minn. 2014) (holding prohibition on class actions in state consumer-protection statute applied in federal court because it "defines the scope of the state-created right, namely the right to bring a lawsuit for violations of the state's consumer-protection law"). That NISNPIA's class-action bar specifically limits the scope of the statutory remedy is inescapably clear from its location in the "Liability" section of the statute, immediately following the provision of the $500 statutory damages remedy. *See Racher v. Westlake Nursing Home Ltd. P'ship*, 871 F.3d 1152, 1164-65 (10th Cir. 2017) (federal courts must "enforce such attendant attributes of state law" that "define the scope of [a] cause of action," such as burdens, defenses, and limitations, and that "significantly affect the result of a litigation") (citation and quotation marks omitted).

The Utah Legislature plainly made a purposeful decision to limit a lawsuit under NISNPIA to individual plaintiffs, and allowed them to recover $500 and costs. There is no question that an action brought in state court would be limited to that scope. But if Rule 23 were to override Utah's class-action prohibition in federal court for NISNPIA claims, Utah companies sued in federal court would be subject to potentially multi-million dollar class suits, resulting in a massive expansion in the scope of litigation under the Act and an impermissible enlargement and modification of NISNPIA's substantive rights and remedies. *See Shady Grove* 559 U.S. at 420 (Stevens, J., concurring) ("When a State chooses to use a traditionally procedural vehicle as a means of defining

the scope of substantive rights or remedies, federal courts must recognize and respect that choice.").

For similar reasons, "[m]ost courts that have evaluated state consumer-protection laws that conflict with Rule 23 have determined that Rule 23 cannot be applied to otherwise prohibited class actions, because the class-action prohibition defines the scope of the state-created right, namely the right to bring a lawsuit for violations of the state's consumer-protection law." *Target Corp. Data Sec. Breach Litig.*, 66 F. Supp. 3d at 1165 (citing cases). For example, in *Fullmer v. A-1 Collection Agency, LLC*, this Court held that the Utah Consumer Sales Practice Act's class action limitation applied in federal court because it was a substantive law that "define[d] the scope of the state-created right." 2022 WL 1538675, at *4 & n.59 (D. Utah May 16, 2022). As here, the class-action limitation was included in the same provision that created the cause of action for statutory damages such that the right of action and the corresponding limitation worked together as part of a single statutory scheme. *Id.* At *4. Because NISNPIA's class action prohibition is bound up with the statute's substantive rights and remedies, that prohibition should apply here in federal court as well as state court.[5]

---

[5] DDM notes that Judge Parrish of this District recently concluded to the contrary in *Curry v. Mrs. Fields Gifts, Inc.*, holding that class-action rules are "traditionally procedural," and that "[s]urgical removal" of the class action prohibition "leaves the rights and remedies otherwise provided by the Act totally intact." 2023 WL 6318108, at *6 (D. Utah Sept. 28, 2023). DDM respectfully disagrees with, and this Court is not bound by, Judge Parrish's decision. *E.g.*, *Camreta v. Greene*, 563 U.S. 692, 709 n.7 (2011) ("A decision of a federal district court judge is not binding precedent in either a different judicial district, the same judicial district, or even upon the same judge in a different case."). As explained above, the *Shady Grove* analysis does not turn on a formalistic distinction between procedural and substantive rules because a state procedural rule "may in some instances become so bound up with the state-created right or remedy that it defines the scope of that right or remedy." *Shady Grove*, 559 U.S. at 420. That the statute's class-action bar could be "removed" from the statute while leaving its rights and remedies "intact" is not an answer to the dispositive question, namely whether judicial removal of the prohibition

Because NISNPIA defines the scope of its rights and remedies to expressly exclude class actions, Plaintiff's class allegations must be dismissed. Without them, there is no jurisdiction under CAFA. The amount in controversy for Plaintiff's individual claim is only $500 in statutory damages, so there can be no diversity jurisdiction, either. *See* Compl. ¶ 82; 28 U.S.C. § 1332(a). Because there is no basis for federal jurisdiction, Plaintiff's Complaint must be dismissed.

### C. As A Prudential Matter Of Comity And Federalism, The Court Should Decline Jurisdiction.

Even if the Court were of the view that Rule 23 could override NISNPIA's class-action bar, the Court is not obliged to punch Plaintiff's "ticket to the federal courthouse" where exercising jurisdiction would subvert Utah's express intent that NISNPIA claims should not proceed as class actions. The Supreme Court has recognized prudential limits on federal jurisdiction that are "closely related to Art. III concerns but essentially matters of judicial self-governance," including, among other things, that "other governmental institutions may be more competent to address the questions" presented by the suit. *Warth v. Seldin*, 422 U.S. 490, 500 (1975).

Federalism and comity are certainly "prudential" considerations. *Levin v. Com. Energy, Inc.*, 560 U.S. 413, 432 (2010) ("Comity . . . is a prudential doctrine."); *Hess v. Port Auth. Trans-Hudson Corp.*, 513 U.S. 30, 53 (1994) (Stevens, J., concurring) (referencing "prudential considerations of comity and federalism"). Thus, even if a federal court has "jurisdiction of a particular proceeding, it may, in its sound discretion, . . . 'refuse to enforce or protect legal rights, the exercise of which may be prejudicial to the public interest'"—it being in the public interest

---

would substantively expand the scope of the statute's rights and remedies—contrary to the intent of the Utah legislature, the Rules Enabling Act, and fundamental precepts of federalism.

that federal courts "exercise their discretionary power with proper regard for the rightful independence of state governments in carrying out their domestic policy.'" *Burford v. Sun Oil Co.*, 319 U.S. 315, 317–18 (1943) (citations omitted). Although courts do not often invoke these considerations to decline jurisdiction, where, as here, the exercise of jurisdiction would so clearly thwart legislative intent, it would be appropriate to do so. That is particularly true where, as here, a case is brought in federal court for the sole reason of subverting that state legislative intent. "The plaintiff cannot, by the simple expedient of electing to ignore unobstructed state avenues of redress, pave the way for a detour through the federal courts, especially in a situation in which important issues of state policy would perforce be by-passed by such quixotic rerouting." *Gordon v. Crouchley*, 554 F. Supp. 796, 799–80 (D.R.I. 1982) (citing, *e.g.*, *Burford*, 319 U.S. at 317–18).[6]

Plaintiff certainly could have pursued "state avenues of redress" for her NISNPIA claim. Her class-action lawyers chose not to because Utah law expressly barred her from bringing that claim on a class basis in state court. That attempt to make an end-run around the law by a "detour through the federal courts" clearly would infringe upon "important issues of state policy." *Gordon*, 554 F. Supp. at 799–800. Indeed, in affirming a district court ruling declining jurisdiction as a matter of comity, the Supreme Court emphasized that "[s]tatutes conferring federal jurisdiction, we have repeatedly cautioned, should be read with sensitivity to 'federal-state relations' and 'wise judicial administration,'" and a "federal court should not 'impose its own judgment on the state legislature mandating which remedy is appropriate.'" 560 U.S. at 419–20, 423. Thus, as an exercise of either its discretionary authority to impose prudential limits on standing, or its inherent

---

[6] *See also Schutza v. Cuddeback*, 262 F. Supp. 3d 1025, 1031 (S.D. Cal. 2017) (declining jurisdiction because "[f]ederal courts may properly take measures to discourage forum-shopping," and plaintiff was attempting to avoid heightened requirements under state law).

power to abstain from asserting subject matter jurisdiction, this Court should not indulge Plaintiff's misuse of the federal courts to end-run the Utah Legislature's intent in devising the law she purports to enforce.

## II.    The Complaint Fails To State A Claim Under NISNPIA.

Even if the Court were to exercise jurisdiction over this matter, the Complaint should be dismissed. First, Plaintiff does not plausibly allege that DDM has an office or other place of business in Utah, as expressly required for liability under the statute. Second, Plaintiff fails to allege any *facts* to show that DDM disclosed anyone's personal information, much less her own. Both of these defects are fatal.

### A.  Plaintiff Has Not Adequately Alleged That DDM Is Subject To NISNPIA.

NISNPIA regulates the disclosure of personal information by a "commercial entity," which is defined as an entity that "(i) has an office or other place of business located in [Utah]; ***and*** (ii) in the ordinary course of business transacts a consumer transaction in" Utah. Utah Code §§ 13-37-102(2), 13-37-203(1) (emphasis added). Nothing in the Complaint adequately pleads the first prong of the "commercial entity" definition—that DDM has an office or place of business in Utah.

In a vain attempt to plead this threshold requirement, Plaintiff first conclusorily alleges that DDM's registered agent's office is actually a DDM office "overseen by [DDM]'s registered agent on [DDM]'s behalf." Compl. ¶ 16. This allegation, that the office located at 1108 E South Union Avenue in Midvale, Utah is actually a DDM office, flunks the plausibility standard.  As the office address is referenced in the Complaint, the court can take judicial notice of the fact that such address is actually the office of CT Corporation, DDM's registered agent, as shown in DDM's Secretary of State registration, an authentic copy of which from the Secretary of State's website is

attached hereto as Exhibit 1.[7] Notably, that same address apparently doubles as an office allegedly "overseen" by a registered agent on behalf of another defendant company, Publisher's Clearing House, sued by these same plaintiffs' counsel, at least according to counsel's verbatim allegations in a separate NISNPIA case.[8] The Court should not countenance this kind of gamesmanship. Not only is the allegation that the office is "overseen" by the registered agent "on [DDM's] behalf" too vague and conclusory to be credited, it is implausible on its face given the address' association with DDM's registered agent and (according to counsel) yet another company.

The presence of a registered agent's office in Utah is insufficient to establish that a company has an office or place of business in the state. *Camoras v. Publishers Clearing House, LLC*, 2024 WL 2262786, at *2 (D. Utah May 17, 2024) (denying motion to amend NISNPIA claim as futile because "it is Defendant's registered agent, not Defendant, who has a location in Utah"). As the court noted in *Camoras*, designation of a registered agent is a prerequisite to transacting business in Utah. *Id.* (citing Utah Code §§ 16-10a-1503(1)(e), 16-17-203(1)). Accordingly, the presence of a registered agent office in Utah cannot satisfy the first prong of the "commercial entity" definition because that would render the second prong—which requires that the company transact with Utah consumers—entirely superfluous. Utah law disfavors interpretations that render

---

[7] *See GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997) (if a "document is referred to in the complaint and is central to the plaintiff's claim, a defendant may submit an indisputably authentic copy to the court to be considered on a motion to dismiss"). DDM respectfully requests this Court take judicial notice of Exhibit 1.

[8] *Camoras v. Publisher's Clearing House*, No. 23-cv-00118 (D. Utah) (Dkt. 21-1, ¶ 17) (identically alleging that "PCH has at least one office or other office place of business in Utah, including but not limited to at **1108 E. South Union Ave., Midvale Utah 84047** (a location overseen by PCH's registered agent on PCH's behalf)") (emphasis added).

a provision meaningless, so "an office or other place of business" must mean something more than a registered agent's office. *State v. Jordan*, 2021 UT 37, ¶ 33, 493 P.3d 683, 689 (describing "the presumption against an interpretation that would render coordinate terms of a statute meaningless or superfluous").[9]

As a back-up to counsel's "registered agent" gambit, the Complaint alleges, on "information and belief," that DDM has "one or more offices" in Utah ("includ[ing]" but "not limited to" its registered agent's office). Compl. Preamble, ¶ 16. This vague, wholly conclusory allegation does not plausibly allege anything. A pleading on "information and belief" cannot stave off dismissal unless (1) the facts are peculiar[ly] within the possession of the . . . defendant or (2) "the belief is based on factual information that makes the inference of culpability plausible." *Auto-Owners Ins. Co. v. Paskco Constr., Inc*., 2024 WL 291130, at *3 n.5 (D. Utah Jan. 25, 2024) (citation and quotation marks omitted). Plaintiff's allegation that DDM has "one or more offices" in Utah does not satisfy either exception. The facts are not uniquely in DDM's control because a simple Internet search will disclose the location of DDM's offices. *See McLin v. Twenty-First Jud. Dist*., 614 F. Supp. 3d 278, 288–89 (M.D. La. 2022) ("information and belief" allegations insufficient where the plaintiff would have been able to access the facts by searching online), *aff'd*,

---

[9] Analogously, courts have found that the existence of a registered agent's office is insufficient to establish physical presence or a place of business in a particular venue. *E.g.*, *Symbology Innovations, LLC v. Lego Sys.*, 282 F. Supp. 3d 916, 931 (E.D. Va. 2017) (having a registered agent and registering as a foreign corporation did not have "any bearing on whether [defendant] maintains a physical place within the District"); *Johnson v. General Dynamics Info. Tech., Inc.*, 675 F. Supp. 2d 236, 241–42 (D.N.H. 2009) ("mere fact" that defendant had a registered agent in the state was insufficient to establish it had a place of business there); *Collins v. Oilsands Quest Inc.*, 484 B.R. 593, 596 (S.D.N.Y. 2012) (finding corporation "does not have any place of business in the United States" despite having a registered agent in Colorado).

79 F.4th 411 (5th Cir. 2023). Nor does Plaintiff provide any factual information to support her "belief" so as to make the allegation plausible, particularly given the Complaint's other allegations regarding DDM's principal place of business and state of incorporation. *See, e.g.*, *Sims v. Opportunity Fin.*, 2021 WL 1391565, at *8 (N.D. Cal. Apr. 13, 2021) ("disregard[ing]" an "information and belief allegation" because it was "conclusory in nature" and undermined by other factual allegations). It is not a plausible inference that a Delaware corporation that maintains its principal place of business in New York, Compl. ¶¶ 15, has an office or place of business in Utah, based on the location of its registered agent and Plaintiff's vague allegation of "other offices." At most, Plaintiffs' allegations are mere legal conclusions about DDM's status as a "commercial entity," which "are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679.

Plaintiff's only remaining allegation bearing on DDM's supposed Utah presence is that, on "information and belief," "[DDM] has employees who work for [DDM] from Utah (and thus conduct business on [DDM]'s behalf at places in Utah)." Compl. at Preamble, ¶ 16. But Plaintiff does not allege that the "employees" who work from Utah work in a DDM office or other place of business. Rather, Plaintiff's allegation is broad enough to encompass employees who might travel to Salt Lake City for a business trip, or who check their work email during a personal vacation in Moab. This does not establish that DDM has an office or place of business in Utah. Even if Plaintiff's allegation refers to employees who permanently reside in Utah and work remotely for DDM, that allegation is not enough to show that DDM is a "commercial entity" under NISNPIA. Whether NISNPIA regulates DDM turns on DDM's office location, not its employees' personal location. Plaintiff's allegation that employees conduct business on DDM's behalf in Utah

establishes, at most, that DDM conducts consumer transactions in Utah, but it does not establish that DDM actually has a place of business or office in the state.[10]

Because Plaintiff cannot plausibly allege that DDM is a "commercial entity" subject to NISNPIA, this Court should dismiss the Complaint with prejudice on this basis alone.

### B.  Plaintiff Does Not Plausibly Allege That DDM Disclosed Her Information.

Plaintiff's Complaint is devoid of any support for her allegation that DDM unlawfully disclosed anyone's (much less her own) private information in violation of NISNPIA during the relevant time period. To survive a motion to dismiss, Plaintiff must allege facially plausible *facts* supporting her claim that DDM is liable under NISNPIA. *See Iqbal*, 556 U.S. at 678. Rule 8 "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 555). "[T]he mere metaphysical possibility that *some* plaintiff could prove *some* set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims." *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (citing *Twombly*, 550 U.S. at 562).

---

[10] Even if the Court were to find (and it should not) that the statutory definition of "commercial entity" is unclear, the legislative history confirms that the Utah Legislature did not intend NISNPIA to have as broad a reach as Plaintiff seeks to impose. In fact, while the original definition of "commercial entity" in the bill required only that the entity transact a consumer transaction in Utah in the ordinary course of business, the Legislature determined that was not enough and amended the definition to also require "an office or other place of business" in Utah. *Compare* Ex. 2 hereto (Utah H.B. 40 1st Sub. (Buff) (Introduced Version)), *with* Ex. 3 hereto (Enrolled Version). Moreover, during debate on the bill, a legislator asked whether the law would apply to "national companies," and the bill's sponsor answered that "this would pertain to companies domiciled in the state of Utah." Utah State House of Rep. 2003 Gen. Session, Day 12, H.B. 0040S01 (Jan. 29, 2003) at 1:04:20-1:04:45. Though not controlling, these statements are consistent with interpreting the Act to apply to only those companies with an in-state presence.

Here, Plaintiff makes only vague allegations, and "without any specific factual allegations, [Plaintiff's] complaint simply cannot cross the line from a merely possible claim . . . to a plausible one." *Warnick v. Cooley*, 895 F.3d 746, 753 (10th Cir. 2018) (citation omitted). In particular, Plaintiff does not identify *any* third party to whom DDM disclosed *anyone's* nonpublic information, much less *her own* nonpublic information, falling well short of the pleading standard. *See, e.g.*, *Nashel v. N.Y. Times Co.*, 2022 WL 6775657, at *4 (E.D. Mich. Oct. 11, 2022); *see also Wheaton v. Apple Inc.*, 2019 WL 5536214, at *4–5 (N.D. Cal. Oct. 25, 2019); *see also Khalik*, 671 F.3d at 1193  (dismissing claims that lacked "any details whatsoever of events" giving rise to them). Instead, she provides a laundry list of types of third parties to whom she speculates her information was disclosed "at various times during the applicable statutory period," including unidentified "data aggregators, data appenders, data cooperatives, direct-mail advertisers, and organizations soliciting monetary contributions, volunteer work, and votes," as well as "other consumer-facing companies." Compl. ¶¶ 70, 73, 75. She does not allege any facts regarding *when* her information was disclosed or *what* information was disclosed to *which* third parties.

The deficiencies in Plaintiff's allegations are even more glaring than those in *Nashel*, where the court dismissed a claim, brought by the same lawyers brought by Plaintiff's counsel here, that the defendant illegally disclosed subscriber information to "data aggregators, data appenders, data cooperatives, and lists brokers" throughout the limitations period, holding that the allegations were mere legal conclusions. 2022 WL 6775657, at *4. The court found the plaintiffs' allegations "merely *possible* rather than plausible" even though the complaint included third-party list broker data cards that "each appeared to claim access to the private reading information" of more than a million of the defendant's subscribers. *Id.* Plaintiff's Complaint here is even less plausible;

Plaintiff does not allege *any* facts showing that any third party had access to any of her personal information, or that of any other DDM customer.

Plaintiff's allegations concerning lists sold by a third-party data broker are likewise indistinguishable from the allegations that failed to support the plaintiffs' claim in *Wheaton*. The complaint there included "a listing by a third-party data broker selling customers' names, addresses, and personal listening information." *Wheaton*, 2019 WL 5536214, at *4. But the court found that the listing did "not explicitly disclose any names, addresses, or personally identifying information of customers," and declined to speculate that disclosure actually occurred. *Id.*

Similarly, here, the Complaint includes screenshots of alleged "datacards" published on a third party's website, purporting to offer subscriber information for sale. *See* Compl. ¶¶ 2–3. But the screenshots do not themselves contain nonpublic subscriber information, nor do they plausibly show that any subscriber information was in fact disclosed. At most, the screenshots show that, at some point in time, a third party offered to sell certain information about certain DDM subscribers. However, "[n]othing on the data cards explains how [the third party] received Defendant's subscription list" and therefore "fail[s] to support a crucial element of Plaintiffs' alleged action"— that *DDM* itself disclosed information it obtained through a consumer transaction. *Nashel*, 2022 WL 6775657 at *5. This "gaping omission" would require a "large inferential leap" to connect DDM's alleged conduct to the data cards, and Plaintiff thus fails to "create a reasonable inference of Defendant's culpability," just as the *Nashel* court held. *Id*. at 11–12.

Even if DDM itself had "offer[ed]" to sell, rent, or exchange certain consumer information as Plaintiff alleges, Plaintiff provides no facts that plausibly show that any third party accepted DDM's offer resulting in a disclosure, nor that *Plaintiff's* information was included among the

information purportedly disclosed. Compl. ¶ 3. Without such facts, Plaintiff can allege only the mere possibility that her information was disclosed in violation of NISNPIA. That is not enough to cross the "line between possibility and plausibility of 'entitle[ment] to relief.'" *Twombly,* 550 U.S. at 557 (citation omitted). Her claim should be dismissed under Rule 12(b)(6).

### III.  Plaintiff's Claim Is Barred By The Applicable Statute Of Limitations.

The Complaint also must be dismissed because Plaintiff's allegations show her claim accrued outside the applicable one-year statute of limitations. Under Utah Code § 78B-2-302(2), a claim must be brought within one year if it is "upon a statute for a penalty." Interpreting that language, the Tenth Circuit has held that a penalty is "a sum of money which the law exacts the payment of by way of punishment for doing some act which is prohibited, or omitting to do some act which is required to be done." *In re Castletons, Inc.*, 990 F.2d 551, 557–58 (10th Cir. 1993) (citation and quotation marks omitted). In *Castletons,* the court held that a statute providing a claim against banks for late return of a check was a penalty, reasoning that "the strict liability imposed" by the statute "was equivalent to a penalty"; the recovery provided was unrelated to the amount of loss, demonstrating that the statute's purpose was to encourage prompt settlement of checks and "to extract a tribute for failure to act in compliance with that purpose." *Id.* at 556, 558.

NISNPIA falls squarely within the definition of a penalty statute because it exacts a $500 payment for a commercial entity's disclosure of personal information without notice. Utah Code § 13-37-203(2)(a). NISNPIA's statutory damages are likewise unrelated to a consumer's loss.[11]

---

[11]  In fact, even if a consumer were to (somehow) suffer more than $500 in actual loss, NISNPIA does not authorize any additional damages. *Cf. Roberts v. C.R. England, Inc*., 318 F.R.D. 457, 502–03 (D. Utah 2017) (holding statute was not a penalty statute where it authorized recovery of actual damages that exceeded the statutory damages amount).

The fixed damages provision extracts a tribute as punishment for noncompliance—a textbook example of a penalty. The statute is therefore subject to the one-year statute of limitations.

Regardless of whether the statute of limitations begins to run when a commercial entity obtains nonpublic personal information without proper notice or when it discloses that information, Plaintiff's claim is time-barred. She alleges only that "[o]n or after January 1, 2004" (the effective date of NISNPIA), she purchased subscriptions to various DDM magazines and that DDM disclosed her information "during the applicable statutory period." Those vague and conclusory allegation are not well-pled, and the Court need not accept them as true. *See, e.g.*, *Robinson v. Morgan Stanley*, 2008 WL 4874459, at *5 (N.D. Ill. June 18, 2008) (dismissing complaint where allegations were either clearly outside the limitations period or else, in an attempt to "skirt[] the statute of limitations issue," were not tied to any date, and were too vague to permit a response).[12] Even if the Court did accept them as true, Plaintiff's allegation that she purchased subscriptions sometime within a 20-year period does nothing to show whether the one-year statute of limitations has run. Plaintiff's claim must be dismissed pursuant to the statute of limitations.

## CONCLUSION

For the foregoing reasons, the Complaint should be dismissed in its entirety with prejudice.

Dated: July 15, 2024                    Respectfully submitted,

                                        */s/ Kristen C. Rodriguez*

                                        Kristen C. Rodriguez (Admitted Pro Hac Vice)
                                        Rebecca Hughes Parker (Admitted Pro Hac Vice)
                                        **Dentons US LLP**

---

[12] *See also Aparicio v. Wells Fargo Bank, N.A.*, 2011 WL 5325578, at *4 (D. Utah Oct. 17, 2011) ("conclusory statements which fail to detail any specific allegations" are not "well-pled factual allegations"), *report and recommendation adopted*, 2011 WL 5325523 (D. Utah Nov. 3, 2011).

1221 Avenue of the Americas
New York, NY 10020
Tel.: (212) 768-6700
Fax: (212) 768-6800
kristen.rodriguez@dentons.com
rebeccahughes.parker@dentons.com

J. Mark Gibb (5702)
**Dentons Durham Jones Pinegar, PC**
111 South Main Street, Suite 2400
Salt Lake City, Utah 84111
Tel.: (801) 415-3000
Fax: (801) 415-3500
mark.gibb@dentons.com


*Attorneys for Dotdash Media, Inc. d/b/a Dotdash Meredith*

## <u>CERTIFICATE OF SERVICE</u>

I, Kristen C. Rodriguez, hereby certify that on July 15, 2024, a true and correct copy of the foregoing document was served on all counsel of record who have consented to electronic service via the Court's CM/ECF system.

By:    <u>/s/ *Kristen C. Rodriguez*</u>

Kristen C. Rodriguez